118 N.J. Super. 565 (1972)
289 A.2d 275
BROOKCHESTER INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
MARIE MATTHEWS, DEFENDANT.
Superior Court of New Jersey, District Court, Bergen County.
Decided March 22, 1972.
*567 Mr. Eugene L. Dinallo, attorney for plaintiff.
Ms. Marie Matthews, pro se.
HUOT, J.D.C.
This is a landlord-tenant action to dispossess on the grounds of nonpayment of rent. Defendant contends that the landlord has violated the recently promulgated wage price guidelines and that by reason thereof the rent reserved in her lease is a nullity; that the rent is not owing and that this action should be dismissed.
The issues raised are:
1. Has jurisdiction to determine compliance or noncompliance with Price Commission regulations been preempted by the United States Government to a United States agency or court or does this court have jurisdiction, in a summary dispossess action for nonpayment of rent, to review the landlord's acts and determine compliance or noncompliance with the Price Commission regulations?
2. If this court has jurisdiction, do the regulations of November 12 or December 16, 1971 control?
3. If this court has such jurisdiction, has the landlord complied with the federal regulation?

*568 I
The United States Congress adopted the Economic Stabilization Act of 1970 and the President approved the same on August 15, 1970. P.L. 91-379. It authorized the President:
To issue such orders and regulations as he may deem appropriate to stabilize prices, rents, wages and salaries at levels not less than those prevailing on May 25, 1970.
It further permitted the President to:
Delegate the performance of any function * * * to such officers, departments, and agencies of the United States as he may deem appropriate.
The authority therein granted was to expire on February 28, 1971.
On December 17, 1970 that authority was extended to March 31, 1971 (P.L. 91-558), and on March 30, 1971 extended to May 31, 1971 (P.L. 92-8). It was again extended by the Congress on May 18, 1971, so that the new expiration date is April 30, 1972, P.L. 92-15.
Pursuant to this statutory authority the President issued Executive Order No. 11615 on August 17, 1971 to stabilize prices, rents, wages and salaries for a period of 90 days and established a Cost of Living Council.
On October 15, 1971 the President issued, pursuant to such statute, Executive Order No. 11627, which established a Pay Board and Price Commission to "take such steps as may be necessary, and authorized by or pursuant to this Order, to stabilize prices, rents, wages and salaries." It continued the Cost of Living Council and set forth its duties and powers. Among these powers was:
Section 4(b). The Council may redelegate to any agency, instrumentality, or official of the United States any authority under this Order, and may, in administering this Order, utilize the services of any other agency, Federal or State, as may be available and appropriate.
*569 Thereafter, the Price Commission promulgated Rules and regulations. On November 12, 1971, the Price Commission adopted Chapter III, Part 300, "Price and Rent Stabilization Regulations," which became effective November 14, 1971. Section 300.001, "Summary," reads:
The rules contained in this subpart relate to increases in prices and rents which are allowable after November 13, 1971, with respect to:

* * * * * * * *
(c) Sales and leases of real property.
The several sections which establish the base price and formula for rentals will be discussed below. It will be seen, however, that the lease here in question is governed by these rules with respect to the amount of rent that plaintiff may charge.
In the present matter the tenant claims a violation of those regulations by the landlord, and our present inquiry is what jurisdiction shall make such determination.
A review of the rules and regulations leads the court to conclude that it may entertain the defense of lack of compliance with the regulations governing rent charges. Sections 300.613, 300.614 and 300.615 provide:

Section 300.613 Rulings.
(a) In general. In the interest of sound administration of the Economic Stabilization Act of 1970, as amended, and this part 300, the Internal Revenue Service will answer inquiries of persons regarding their status for price and rent stabilization purposes and as to the applicability of this Part 300 to their proposed acts or transactions.
(b) Price stabilization ruling. A `Price Stabilization Ruling' is an official interpretation of the law by the Internal Revenue Service which has been published in the Price Stabilization Bulletin. Price Stabilization Rulings are published for the information and guidance of the Price Commission, Internal Revenue Service Officials and others concerned.
(c) Ruling guidelines. (1) Rulings will be issued only with respect to prospective transactions.
(2) Rulings will not be issued on alternative plans of proposed transactions or on hypothetical situations.
(3) A ruling will not be issued if the national office of the Internal Revenue Service knows or has reason to believe that the *570 same or identical issue in connection with a possible violation of this part by the person who is the subject of the ruling request is before any field office of the Service or any other agency charged with enforcement of this part.
(4) Further, a ruling will not be issued with respect to a matter upon which a recent court decision adverse to the Government has been handed down until the Government has decided whether to follow the decision or litigate further.
(d) Instructions. Any person requesting a ruling should direct such request, in writing to the District Director of Internal Revenue for the district in which such person has his residence or principal place of business. Each request for a ruling must include 
(1) A complete statement of all such information as is relevant to the status of the person and proposed transaction under this Part 300.
(2) Copies of all relevant documents affecting such status or transaction, and
(3) A statement, executed under penalty of perjury, that such statements and documents, to the knowledge of the person making the request, are true and accurate. Only one ruling request may be made with respect to a particular transaction, and no ruling request may be made with respect to an issue described in paragraph (c) (3) of this section.
(e) Determination letters. In the discretion of the Internal Revenue Service the request of the person may be answered with a determination letter directed solely to the attention of the person in cases in which the Service deems the question not of sufficient importance to the Price Commission, the Internal Revenue Service, or the public in general to warrant the issuance of a ruling.

Section 300.614 Adverse determinations and appeal.
If a person receives an adverse determination letter (as described in paragraph (e) of § 300.613) he may, within 10 days, file a written request for a conference with the district director who issued such adverse determination letter. If the district director fails to reverse his initial determination following such conference, the person affected may, within 10 days after notice of such final determination, file written application for an appeal, together with a brief outlining the basis for such appeal, with the Price Commission. A copy of the application for appeal and the brief shall, at the same time, be directed to the Internal Revenue Service, Attention: Assistant Chief Counsel (Stabilization), Washington, D.C. 20224.

Section 300.615. Failure to obtain relief.
If a person is denied relief by the Price Commission, either because of an adverse determination or because of the Price Commission's refusal to grant an appeal, such person may, within 30 days, file an action for relief in the appropriate U.S. District Court.
The court does not find the language above quoted or any language in the Economic Stabilization Act or the Executive *571 Orders of the President which indicate an intent to retain exclusive jurisdiction of the applicability of the regulations in any United States administrative agency or United States court. Nor does the court find an intent to limit inquiry of compliance with the act to those persons familiar enough with the Price Commission rules and regulations to know to ask for a ruling before a rent increase is established. § 300.614 (d)(1).
The realities of landlord-tenant relations dictate against such restrictive conclusion. Rarely will a tenant be aware of a proposed increase of rent in a new lease until that new lease is presented. A failure to execute the new lease will leave the tenant subject to being dispossessed as a holdover tenant. Yet an inquiry to the Internal Revenue Service pursuant to § 300.613 may not result in a ruling before the old lease expires.
Section 300.616 urges the citizens to report violators to the Internal Revenue Service, and § 300.651 provides penalties that may be assessed against such violators. But these are of little solace to a tenant who has already been dispossessed from his home on the ground that he is a holdover tenant because he has failed to pay a rent which was later to be determined an illegal amount.
This court concludes that the defense of failure to comply with, or breach of, the rules and regulations promulgated by the Price Commission may be entertained in a summary dispossess proceeding.
The court further concludes that it should entertain such defense. The jurisdiction of this court to dispossess a tenant after default in rent "encompasses the question of whether the amount of rent alleged to be in default, is due, unpaid and owing, not only whether it is due and unpaid." Marini v. Ireland, 56 N.J. 130, 139 (1970). Obviously, a rent which is in excess of and violates the Economic Stabilization Act cannot be legally owing.
Since the court has determined it has jurisdiction to entertain the defense that the rent is not in compliance with *572 the rent allowed under the Price Commission rules and regulations, it turns now to the specific facts of this case.
The tenant, Marie Matthews, has been a tenant of plaintiff Brookchester for several years. Her prior lease expired December 31, 1971, and in contemplation of that expiration plaintiff and defendant executed a lease dated December 16, 1971 for a term of one year at a rental of $145 a month. However, plaintiff and defendant by letter supplemented said lease by agreeing that the rent would be $135 pursuant to the Price Commission guidelines and would increase to $145 if those regulations were modified during the term of the lease to permit that rent. Plaintiff failed to pay the rent due January 1, 1972, and this action was instituted on January 24, 1972. The matter came on for trial on February 7, 1972, at which time the defense of failure to comply with the Price Commission regulations was raised. The matter was then adjourned to March 10, 1972 to give defendant an opportunity to obtain counsel and for the submission of briefs, particularly on the question of the court's jurisdiction. Defendant chose not to obtain counsel and neither side filed briefs.
On March 10, 1972 plaintiff introduced testimony concerning its compliance with the regulations as it understood them, and entered into evidence 119 leases. These leases cover one-bedroom apartments, the same or substantially similar to defendant's apartment. Plaintiff has 936 one-bedroom apartments in the complex of approximately 4,000 units. The 119 leases represent 12.7% of the 936 one-bedroom apartments controlled by plaintiff-landlord.
The lease is dated December 16, 1971. On that date the Price Commission filed new regulations in the Federal Register at 11:25 A.M. Among them was § 300.15(d), which now requires a landlord to notify the tenant of a proposed increase and "factual justification for the difference between the rent charged during the freeze base period" and the new rent. This notification was not required under the regulation *573 of November 12, 1971. The failure to provide this notification is one of defendant's claims herein.
The lease and the regulations bear the same date. There is no evidence to indicate what hour of the day the lease was executed. But, without a discussion of the constitutional issue of infringement of contracts that might be raised, the court concludes that the "immediate effect" of such regulations must give way to a common sense requirement that such rules and regulations be promulgated to those affected thereby before they can have effect. Normally the regulations take effect after a 30-day period. Here the waiting period was waived and they were to take effect immediately. However, this court cannot permit an interpretation that they were binding instantaneously on a landlord hundreds of miles from the publication area. As a matter of reason and justice, it must be held that the regulations filed December 16, 1971 do not govern the lease between plaintiff and defendant which was dated the same day. It would be unreasonable to expect the landlord to comply with the regulations that were first adopted in Washington, D.C. three days before but not published in the Federal Register until the lease signing date. Therefore, this court concludes that plaintiff, on the facts of this case, was not required to give such notice, and defendant's complaint of failure to give such notice is not valid.
There remains the question of whether plaintiff complied with the Price Commission rules and regulations of November 13, 1971. Section 300.507(b) provides:
Leases of real property  (1) In general. The base price for a lease of an interest in real property is the highest price charged by the person with respect to the same or substantially identical rental units in a substantial number of transactions during the freeze base period. A provision in a lease of an interest in real property executed prior to August 15, 1971, which provides for an increased rental to take effect August 14, 1971, may take effect after November 13, 1971, to the extent such increased rental does not exceed the base price for the rental of such real property.
Sections 300.513(b) and (e) provide:
Transaction. A `transaction' shall be deemed to occur at the time and place a binding contract is entered into between the parties to *574 the transaction. A `transaction' shall mean an arms-length transaction, and shall include only transactions between unrelated persons which are not members of a controlled group.

* * * * * * * *
(e) Freeze base period. The term `freeze base period' means either 
(1) The period beginning July 16, 1971, and ending August 14, 1971, or
(2) If a person had no transaction during the period specified in subparagraph (1) of this paragraph, the nearest preceding 30-day period in which he had a transaction.
The freeze base period for plaintiff is the period beginning July 16 and ending August 14, 1971, because it did have transactions during this period of time. The following 11 leases were executed by plaintiff with other tenants, all of which govern the same or substantially similar apartments.

 Date Name Address Rent
 July 16 T. Kenny 924B Boulevard $135
 July 16 M. Boller 303B Reichelt Road $135
 July 19 F. Roth 320C Reichelt Road $140
 July 19 J. Bonaldi 907C Boulevard $135
 July 21 E. McEwan 308B Faller Drive $135
 July 21 M. Yates 907A River Road $135
 July 30 R. O'Hare 17C Bulger Avenue $135
 August 2 M. McDermott 858C Berkley Street $135
 August 5 P. Gallagher 889A Boulevard $135
 August 6 B. Bunis 877C Boulevard $135
 August 12 R. Rosinski 307F Reichelt Road $135

This, however, is not sufficient to dispose of the matter. Section 300.507(b) requires evidence that these 11 leases, executed during the freeze base period (July 16, 1971  August 14, 1971), were a "substantial number of tranactions during the freeze base period." The Court cannot determine that on the basis of the evidence presented.
There are 936 units substantially similar to defendant's apartment, of which 119 were introduced into evidence. Of these 119 only 11 were entered into during the freeze base period. The remaining 108 were executed prior to that time. However, we do not know the dates of the 817 leases not introduced *575 into evidence. Because of this we cannot determine if the 11 leases of the freeze base period constituted a "substantial number of transactions during the freeze base period."
Because of the confusion which has generally resulted from the promulgation of the President's Executive Orders and the rules and regulations of the Price Commission, the court concludes that it would be unfair to dismiss the complaint on the grounds of insufficient proof. It will, therefore, set Friday, April 14, 1972, at 1:30 P.M., as the time for plaintiff to have the opportunity to present such additional evidence as it may have concerning transactions conducted during the freeze base period. In the interim, defendant shall deposit the rent required by the lease with the clerk of the court.