STONERIDGE APTS., COMPANY, a Partnership, on behalf of itself and all other similarly situated owners of real property in the City of New York, Plaintiff,

v.

John V. LINDSAY, as Mayor of the City of New York; Jason D. Nathan, as Administrator of the Housing and Development Administration of the City of New York, and the City of New York, Defendants.

No. 69 Civ. 2405.

United States District Court
S. D. New York.

Aug. 4, 1969.

**678**

Abraham Engelman, New York City, for plaintiff.

J. Lee Rankin, Corp. Counsel, James Nespole, Asst. Corp. Counsel, and Harry Michelson, Asst. Counsel, New York City, for defendants.

## OPINION

LASKER, District Judge.

This is one of a number of cases brought by landlord-plaintiffs attacking the constitutionality of Local Law 16 of 1969 of The City of New York. The plaintiff asks judgment on behalf of itself and others similarly situated declaring the local law unconstitutional for reasons stated below and enjoining its enforcement.

The complaint alleges that plaintiff is the owner of a Class A multiple dwelling in the City of New York (containing six or more housing units occupied by tenants), which is subject to a mortgage insured under the provisions of the National Housing Act. 12 U.S.C. § 1702 et seq. Plaintiff, suing in behalf of itself and all other owners of real property in the City of New York similarly situated, contends that Local Law 16, if held to be applicable, is violative of the following clauses of the Constitution of the United States: Article I, Section 10, in that its provisions impair the obligations of contracts; Article VI, cl. 2, in that the ordinance conflicts with the National Housing Act, enacted under the authority of the United States, which is the supreme law of the land; and Amendments V and XIV in that its enforcement against plaintiff would constitute a deprivation of property without due process of law.

The local law by its terms, YY 51–3.0, applies to Class A multiple dwellings containing six or more units completed after February 1, 1947, with the exception of dwelling units "aided by government insurance under any provision of the National Housing Act, to the extent this local law or any regulation or order issued thereunder is inconsistent therewith, * * *." With respect to covered property, a rent guidelines board shall establish a level of fair rent increases over the rent charged on May 31, 1968, "but not in excess of ten per cent for a two year lease and fifteen per cent for a three year lease over the rental charged on May thirty-first, nineteen hundred sixty-eight * * *" YY 51–5.0. The law also provides for the formation of a real estate industry stabilization association "having as members the owners of no less than forty per cent of the dwelling units covered by this law * * *" YY 51–6.0. The association must adopt a code which "binds the members of the association not to exceed the level of fair rent increases under any lease renewal or new tenancy bearing an effective date on or after June first, nineteen hundred sixty-eight for dwelling units covered by this law * * *" YY 51–6.0 c. (2). As to dwelling units whose owners do not become members in good standing of an association pursuant to YY 51–6.0, the maximum rent is to be established by the city rent agency "on the basis of the rent charged on May thirty-first, nineteen hundred sixty-eight." YY 51–4.0 b.

As previously pointed out, the real property involved herein is subject to the lien of a mortgage aided by United States government insurance under provisions of the National Housing Act. The presence of federal government insurance carries with it rent schedules pursuant to 12 U.S.C. § 1747c, which states:

"The Secretary shall require that the rents for the dwellings in any project insured under this subchapter shall be established in accordance with a rent schedule approved by the Secre-

tary, and that the investor shall not charge or collect rents for any dwellings in the project *in excess* of the appropriate rents therefor as shown in the latest rent schedule approved pursuant to this section." (Emphasis added.)

Accordingly, in November of 1967, the Federal Housing Administration determined that the maximum annual rental which plaintiff could lawfully receive was not to exceed $344,900, and this figure remained applicable on May 6, 1969, the date Local Law 16 was approved by the Mayor.

Plaintiff contends that the local law, if held to be applicable, would impose on both plaintiff and the Federal Housing Administration a fixed annual rental for plaintiff's property in a different amount than that authorized by the contract between plaintiff and the Federal Housing Administration. Despite the local law's express exclusion of Class A multiple dwellings completed after February 1, 1947, "aided by government insurance under any provision of the National Housing Act, to the extent this local law or any regulation or order issued thereunder is inconsistent therewith," plaintiff claims that public officials of the City have openly declared that federally-insured dwelling units are subject to the local law and that the prospect of the local law applying to federally-insured property presents plaintiff with the dilemma of whether or not to join the association. Failing to join the association, plaintiff asserts, would deprive it of the limited benefits thereof, i. e., right to receive such rent fixed by "guidelines board" not to exceed a sum equal to 10% of the May 31, 1968 rent for a two year lease, and 15% for a three year lease. On the other hand, joining the association may, according to plaintiff, constitute a waiver of the right to challenge the validity of the local law.

For the reasons stated below, these contentions must be rejected.

The plaintiff misreads the effect of the impairment of contract clause of the Constitution (Article I, Section 10). The clause is clearly intended to protect benefits and rights of a party under a contract and not to interfere with legislation which merely relates to the subject matter of the contract. Local Law 16 does not interfere in any way with plaintiff's benefits and rights under its contract with the Federal Housing Administration. Plaintiff's benefit and right thereunder is the continuance of its federally-insured mortgage, and the legislation in no way affects that right. The argument that the plaintiff has a "right" to charge the maximum rent under its agreement with the FHA is not valid. The contract does not give plaintiff a right to charge such a maximum rent but, to the contrary, obligates it not to charge a rent in excess of the maximum.[1]

The argument that the ordinance violates the supremacy clause of the Constitution (Article VI, cl. 2) is without merit. There appear to be two strings to the plaintiff's bow on this issue. First, it contends that, although the ordinance on the face of it declares that it is not applicable to FHA-insured housing, nevertheless federal officials have made statements that the legislation is applicable to FHA-insured housing, and therefore the court should grant a judgment declaring such inapplicability. Plaintiff's arguments must be rejected because its factual allegations are not correct. The ordinance does not state that it does not apply to FHA housing, but excepts such property from its application only "to the extent this law or any regulation or order issued hereunder is inconsistent" with the National Housing Act. Furthermore, the record in this case does not establish that federal officials have contended that the ordinance applies generally to FHA housing. To the contrary, all that federal officials have

---

1. 12 U.S.C. § 1747c, supra.

stated is that the ordinance applies, as it does, to the extent that it is not inconsistent with applicable federal legislation, and that conceivably the ordinance may diminish plaintiff's ability to fulfill its obligations to the Federal Housing Administration.[2] Should the ordinance operate at some future date to interfere with plaintiff's ability to perform its obligations to the FHA, it would, of course, have the right at that time to litigate the validity of the application of the ordinance to it. However, in this connection it is important to note that Local Law 16 establishes a procedure by which the plaintiff could apply to the Conciliation and Appeals Board "for increases in excess of the level of fair rent increase" and exhaustion of this remedy should precede resort to this court for relief on the ground of unconstitutionality.

The plaintiff's second argument is that the ordinance violates the supremacy clause because the ordinance, in spite of its proviso to the contrary, attempts to legislate in a field already occupied by federal legislation. The plaintiff's position is unsound. As brought out in the discussion above, no conflict exists between the subject matter of the ordinance and that of federal provisions which would invoke the supremacy clause. The ordinance deals with rent control pure and simple. It cannot conflict with federal legislation on this subject, since there is none. The only federal legislation relevant to the discussion is the National Housing Act, the subject matter of which, as indicated in Choy v. Farragut Gardens, 131 F.Supp. 609 (S.D.N.Y.1955), is unrelated to that of rent control. Surely nothing is here in the nature of the "irreconcilable conflict" between state and federal action which the Supreme Court has held is necessary to invalidate state legislation. Florida Lime & Avocado Growers v. Paul, 373 U.S. 132, 146, 83 S.Ct. 1210, 10 L.Ed.2d 248. There the court stated (at 142, 83 S.Ct. at 1217):

> "The test of whether both federal and state regulations may operate, or the state regulation must give way, is whether both regulations can be enforced without impairing the federal superintendence of the field, not whether they are aimed at similar or different objectives."

The plaintiff attacks the ordinance also as depriving it of property without due process of law. It has long been settled that state and municipal ordinances under the appropriate circumstances which exist here[3] do not constitute deprivation of property without due process. See, for example, Israel v. City Rent and Rehabilitation Admn. of the City of New York, 285 F.Supp. 908 (S.D.N.Y.1968), and cases cited; Stuyvesant Town, Inc. v. Ligham, 17 N.J. 473, 111 A.2d 744 (1955).

Finally, plaintiff is mistaken in its apprehension that should it exercise its option to join a real estate industry stabilization association, it will waive any rights to test the validity of the local law. While it is true that each

2. Letter from William B. Ross, Acting Assistant Secretary-Commissioner of the Department of Housing and Urban Development, Federal Housing Administration, to Congressman Benjamin S. Rosenthal dated May 22, 1969—Exhibit A to affidavit of Jason R. Nathan sworn to June 23, 1969, and submitted in opposition to this motion.

3. Local Law 16 finds "that a serious public emergency continues to exist in the housing of a considerable number of persons within the city of New York which emergency was created by war, the effects of war and the aftermath of hostilities; * * * that there continues to exist an acute shortage of dwellings; that unless residential rents and evictions continue to be regulated and controlled, disruptive practices and abnormal conditions will produce serious threats to the public health, safety and general welfare * * *" These findings were made on the basis of studies done by the Census Bureau of the United States Department of Commerce, investigations by the New York City Housing and Development Administration and the Department of Consumer Affairs, and Report to the Mayor by the Rent Guidelines Board.

member of the association is required to agree in writing to comply with a code to be established by the association, nothing in the ordinance or otherwise prevents plaintiff from attacking the validity of the entire ordinance, the provisions relating to the association included. Indeed, that is precisely what plaintiff is doing at the moment. Should it hereafter determine to join an association, there appears no reason why it cannot do so, under protest, thereby saving its rights in accordance with normal procedure. Indeed, the affidavit of Walter J. Schneider, a partner in the plaintiff's partnership, submitted in support of the instant motion, emphasizes that the Real Estate Industry Stabilization Association of N.Y.C., Inc. has advised those interested in joining that:

> "You do not waive any of your legal rights by joining the Association. You retain your right to challenge the City's guidelines in the courts, either individually or on an industry wide basis. These avenues are being explored at the present time."

According to the public press, other landlords do not consider compliance with the ordinance as constituting any waiver of rights.[4]

 The cases of Fieger v. Glen Oaks Village, 309 N.Y. 527, 132 N.E.2d 492, and Fink v. Cole, 302 N.Y. 216, 97 N.E. 2d 873, which plaintiff claims support its position, are inapposite. *Fieger* merely holds that tenants of an FHA housing project could not in a state court action against the landlord secure a revision or review of allegedly excessive rentals fixed by the Federal Housing Administrator or Commission. *Fink* deals only with the question of unconstitutional delegation of power to a private corporation. Here it is unnecessary to determine whether delegation of power to the associations established under Local Law 16 might be un-

constitutional, since there is no requirement for the plaintiff to join such an association. Granted that there are benefits to be secured by joining the association, nevertheless if plaintiff chooses not to join, it will be subject to ordinary rent control provisions which, as stated above, have long been held constitutional.

It is clear that there is very little, if any, likelihood of the plaintiff's success at trial of this case on the merits. This being so, for the reasons stated above the motion is denied.

Pursuant to Rule 52(a), this opinion constitutes the court's findings of fact and conclusions of law.

It is so ordered.

---

4. New York Times, July 31, 1969, p. 36: "Landlords have been attaching riders to new leases stating that if the law is stricken down, rents will be raised as much as 15% even during the remainder of the lease."