**COLUMBIA PLAZA LIMITED PARTNERSHIP et al., Plaintiffs,**

v.

**Alfred COWLES et al., Defendants.**

**Civ. A. No. 75–0782.**

United States District Court, District of Columbia.

Sept. 10, 1975.

---

Warren K. Kaplan, Dorothy D. Sellers, Washington, D. C., for plaintiffs.

John C. Salyer, III, David S. Eisenberg, Gary A. Michel, Asst. Corp. Counsels, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

GESELL, District Judge.

This suit involves the constitutionality under the Supremacy Clause [1]

1. U.S.Const. art. VI, cl. 2.

of the District of Columbia rent control ordinance[2] as it applies to housing projects that are federally insured under § 220 of the National Housing Act.[3] Plaintiffs contend that the local law is invalid because there has been a federal preemption of the authority to regulate rents in such projects. Both sides have moved for summary judgment, and the question has been fully briefed and argued. Although the Department of Housing and Urban Development (HUD) has been notified of this litigation, it has not entered an appearance. Finding no genuine issue as to any material fact, the Court deems the matter appropriate for summary judgment, and grants the defendants' motion.

Section 220 of the National Housing Act was designed "to aid in the elimination of slums and blighted conditions and the prevention of the deterioration of residential property . . . ."[4] The statute seeks to accomplish these goals by attracting private investors through a system of federally guaranteed mortgages. *Tenants' Council of Tiber Island—Carrollsburg Square v. Lynn*, 162 U.S. App.D.C. 61, 497 F.2d 648, 650 (1973), *cert. denied*, 419 U.S. 970, 95 S.Ct. 235, 42 L.Ed.2d 186 (1974). In insuring such mortgages, the Secretary of HUD is empowered to "require such mortgagor to be regulated or restricted as to *rents* or sales, charges, capital structure, rate of return and methods of operation . . . ."[5] Pursuant to this authorization, the Secretary has promulgated the following regulation:[6]

(e) Rents and charges. No charge shall be made by the mortgagor for the accommodations, facilities or services offered by the project *in excess of* those approved by the Commissioner in writing prior to the opening of the project for rental. In approving such charges and in passing upon applications for changes, consideration will be given to the following and similar factors:

(1) Rental income necessary to maintain the economic soundness of the project.

(2) Rental income necessary to provide reasonable return on the investment consistent with providing reasonable rentals to tenants.

Consonant with this regulation, the Secretary entered into an agreement with the plaintiffs that reads in pertinent part:[7]

4(a) Owners shall make dwelling accommodations and services of the project available to occupants at charges *not exceeding* those established in accordance with a schedule approved in writing by the Commissioner . . . .

4(b) The Owner shall have the right to charge . . . any tenant any amounts as from time to time may be mutually agreed upon between the tenant and the Owner and approved in writing by the Commissioner for any facilities and/or services which may be furnished by the Owner to the tenant upon his request, in addition to

---

2. D.C. Regulation 74–20. Subsequent to the initiation of this suit, the District of Columbia Council passed a new rent control act. However, this does not render the present litigation moot, since the provisions of the earlier law are still in effect. *Compare White v. Regester*, 422 U.S. 935, 95 S.Ct. 2670, 45 L.Ed. 2d 662 (1975). Moreover, for purposes of the issue raised here, the two laws are conceded by the parties to be substantially the same in all material regards, so that this controversy between the parties will continue even after the effective date of the new law. *Compare Hill v. Printing Industries of the Gulf Coast*, 422 U.S. 937, 95 S.Ct. 2670, 45 L.Ed.2d 664 (1975); *Allee v. Medrano*, 416 U.S. 802, 818–20, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974).

3. 12 U.S.C. § 1715k (1970).

4. 12 U.S.C. § 1715k(a) (1970).

5. 12 U.S.C. § 1715k(d)(2)(A) (1970) (emphasis added).

6. 24 C.F.R. § 207.19(e) (1975) (emphasis added). This provision applies to § 220 projects by virtue of 24 C.F.R. §§ 220.501, 220.511 (1975); *cf.* 24 C.F.R. § 220.751 (1975).

7. Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and Plaintiffs' Cross-Motion for Summary Judgement, at 8 n.6 (emphasis added).

the facilities and services included in the approved Rental Schedule. Such services may include but are not limited to furniture or furnishings, telephone operator and switchboard services, electric current, gas, air cooling and air conditioning . . . .

Thus, whatever may be the Secretary's authority, he has undertaken only to establish maximum rents.

Regulation 74–20 was enacted by the District of Columbia Council pursuant to the District of Columbia Rent Control Act of 1973,[8] and was approved by Mayor Walter E. Washington on August 1, 1974. It sets maximum rents for housing in the District of Columbia, the amount of the maximum for any given unit being equal to 112.32% of the rent charged on February 1, 1973.[9] However, the Regulation recognizes that the landlord is entitled to "a reasonable return from such housing accommodations," and authorizes the District of Columbia Housing Rent Commission to "make such individual adjustments . . . of the maximum rent ceilings as may be necessary to correct hardships of [sic] other inequities . . . ."[10]

Both sides agree that Regulation 74–20 applies to § 220 federally insured housing projects, and that the ceiling rental presently set under the Regulation (absent any hardship adjustment) is less than the maximum approved for the plaintiffs' project by the Secretary. But "this difference poses, rather than disposes of the problem" under the Supremacy Clause, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 141, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), and thus a more detailed analysis is necessary.

■ In pursuing this inquiry, the Court is mindful of the admonition by the Supreme Court:

> If Congress is authorized to act in a field, it should manifest its intention clearly. It will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intention to do so. The exercise of federal supremacy is not lightly to be presumed. *New York Dept. of Social Services v. Dublino*, 413 U.S. 405, 413–14, 93 S.Ct. 2507, 2513, 37 L.Ed.2d 688 (1973).

It has similarly been stated:

> Congress legislated here in a field which the States have traditionally occupied. . . . So we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress. *Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 633, 93 S.Ct. 1854, 1859, 36 L.Ed.2d 547 (1973).

Only when there are "persuasive reasons" and "an unambiguous congressional mandate" should the Court find that the area has been preempted, *Florida Lime & Avocado Growers, supra*, 373 U.S. at 142, 146–47, 83 S.Ct. 1210. These observations are especially apt where, as here, the subject at issue has traditionally been left to state or municipal control and involves a problem that is necessarily amenable only to regulation directed at the particular conditions in each locality or region.

■ This case does not involve a situation in which Congress has expressly declared that it intends the federal activity to be exclusive.[11] Nor is

---

8. 87 Stat. 623, Pub.L. 93–157, 45 D.C.Code §§ 1622, 1623 (Supp.1975).

9. Regulation 74–20 § 5(b). *See Apartment and Office Building Ass'n of Metropolitan Washington v. Washington*, 343 A.2d 323, 327 (D.C.App.1975).

10. Regulation 74–20, § 6(a).

11. The instant situation varies from that in most preemption cases because the D.C. rent control program was established pursuant to an enabling statute enacted by the Federal Congress. However, the fact that Congress authorized rent control in the District of Columbia does not by itself evince a congressional determination that the field was not

this an area in which preemption may be inferred from the need for exclusive federal supervision or national uniformity, or from the existence of a comprehensive and detailed federal regulatory scheme. *See, e. g., Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 633, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973); *Florida Lime & Avocado Growers, supra,* 373 U.S. at 141, 143–44, 146–47, 83 S.Ct. 1210, 10 L.Ed.2d 248; Note, *Parker v. Brown: A Preemption Analysis,* 84 Yale L.J. 1164, 1167–69 (1975), and cases cited therein. National uniformity is not even attemped, since the existing federal program concerns only maximum rents which are set on a project-by-project basis, *compare Florida Lime & Avocado Growers, supra,* 373 U.S. at 147–51, 83 S.Ct. 1210. Furthermore, § 220 is not a rent control measure at all;[12] thus, there is no federal system of rent control in effect. HUD itself recognizes that § 220 projects must comply with, *inter alia,* "all applicable building *and other governmental regulations.*"[13] Section 220 therefore cannot be considered as *per se* preemptive of local control.

■ The preemption issue therefore turns on the question whether there is an actual conflict between the federal and local laws such that the latter "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Perez v. Campbell,* 402 U.S. 637, 649–50, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1970); *Florida Lime & Avocado Growers, supra,* 373 U.S. at 141, 83 S.Ct. 1210, 10 L.Ed. 2d 248; *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941).[14]

■ Under the "actual conflict" test, it does not appear that D. C. Regulation 74–20 has been preempted by § 220 of the National Housing Act. The Secretary of HUD by establishing maximum rents protects the Federal Government's "interest as a mortgagee in the economic soundness of the project," and assures the financial viability and continuity of a project because "exorbitant returns" and "runaway revenues," are prevented, *Tiber Island, supra,* 497 F.2d at 652–53. However, this interest is not necessarily impaired by a rent control measure that sets a ceiling beneath the maximum fixed by the Secretary.

■ Plaintiffs argue that the Secretary's schedule allows them to charge rents up to the specified maximum and that D. C. Regulation 74–20 is therefore invalid because it forbids that which is permitted by the National Housing Act. Although their premise is correct, the conclusion is erroneous. The fact that something is permissible

---

preempted with regard to § 220 projects. By the same token, Congress also did not expressly conclude that § 220 occupied the area to the exclusion of all local control. Had Congress focused on the problem presented herein, the preemption issue might well be different. However, the parties have not cited any indication that Congress addressed or resolved this question, *compare Perez v. Campbell,* 402 U.S. 637, 655, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). Thus, the fact of congressional authorization is without significance, and the Court must dispose of the matter without the assistance of legislative consideration.

12. *See Tiber Island, supra,* 497 F.2d at 652, 653. Other sections of the National Housing Act have also been interpreted not to be rent control provisions. *See Helmsley v. Borough of Fort Lee,* 362 F.Supp. 581, 590–91 (D.N. J.1973); *Stoneridge Apts., Co. v. Lindsay,* 303 F.Supp. 677, 680 (S.D.N.Y.1969); *cf.*

*Choy v. Farragut Gardens,* 131 F.Supp. 609 (S.D.N.Y.1955).

13. 24 C.F.R. §§ 220.506(c), 220.594 (1975) (emphasis added).

14. Both parties have contended that their position is supported by the relationship of the respective purposes underlying § 220 and D.C. Regulation 74–20. However, the preemption issue does not depend on "whether the *purposes* of the two laws are parallel or divergent," *Florida Lime & Avocado Growers, supra,* 373 U.S. at 142, 83 S.Ct. at 1217, or on whether the local legislature had some purpose in mind other than frustrating the federal policy, *Perez v. Campbell, supra,* 402 U.S. at 651–52, 91 S.Ct. 1704. Consideration of purposes is relevant only in determining whether there is an actual conflict that hinders the effectuation of the congressional objectives.

under federal law does not necessarily mean that the states may not prohibit it. *See Florida Lime & Avocado Growers, supra,* 373 U.S. at 143, 83 S.Ct. at 1218 ("the District Court indicated that the Florida growers might have avoided such rejections by leaving the fruit on the trees beyond the earliest picking date permitted by the federal regulations"). Here, the federal standard establishes a maximum rent. It prohibits any charge in excess of that amount, but does not conversely create a right or entitlement to exact the specified maximum. Under these circumstances, no conflict with the federal provisions is presented. *See Druker v. Sullivan,* 322 F.Supp. 1126, 1129-30, *subsequent opinion,* 334 F.Supp. 861 (D.Mass.1971), *aff'd,* 458 F.2d 1272 (1st Cir. 1972), *opinion after abstention sub nom. Druker v. Boston,* 287 N.E.2d 801 (Mass.Sup.Jud.Ct.1972); *Stoneridge Apts., Co. v. Lindsay,* 303 F.Supp. 677, 679 (S.D.N.Y.1969).[15] Moreover, since the federal standard is permissive rather than mandatory, there is no "impossibility of dual compliance" with the two statutes, *Florida Lime & Avocado Growers, supra,* 373 U.S. at 142-43, 83 S.Ct. 1210.

▮▮▮▮ The Court's holding that the D. C. rent control law is not preempted by § 220 finds additional support in HUD's general position on the issue. Although preemption is a question of law that is ultimately to be decided by the Court, the view of the agency assigned to administer the congressional program should be considered in determining the federal interests at stake and the degree to which such interests are impaired or frustrated by the local action. As the Supreme Court stat-

ed in *New York Dept. of Social Services v. Dublino, supra,* 413 U.S. at 420-21, 93 S.Ct. at 2516:

> Moreover, the Department of Health, Education and Welfare, the agency of Government responsible for administering the Federal Social Security Act . . . has never considered the WIN legislation to be preemptive. . . . In interpreting this statute, we must be mindful that "the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong . . . ." *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L. Ed.2d 371 (1969); *Dandridge v. Williams,* 397 U.S. at 481-82, 90 S.Ct. [1153] at 1159-1160.[16]

Relevant to the present suit, HUD has promulgated the following rule (24 C.F. R. § 403.2 (1975)):

PART 403—LOCAL RENT CONTROL

. . . . .

> § 403.2 Rental Charges
> The Department will generally not interfere in the regulation by local rent control boards of rents of unsubsidized projects with mortgages insured by HUD. However, HUD will assert exclusive jurisdiction over the regulation of rents of such a project when the delay or decision of a local rent control authority jeopardizes the Department's interest in the project.

This section applies to § 220 projects, 24 C.F.R. § 403.1 (1975), and thus HUD does not consider § 220 to be preemptive of local rent control in the circumstances alleged in this case.[17] *See also* 24 C.F.R.

15. The Court recognizes that the recent decision in *Sanders v. Federal National Mortgage Ass'n,* 393 F.Supp. 739 (E.D.La.1975), involving federal preemption of state usury laws, proceeded by a different analysis and reached a contrary conclusion. However, it must be noted that *Sanders* arose in a different context that sufficiently distinguishes it from the present case. Moreover, to the extent that *Sanders* is contrary to the instant decision, the Court finds it unpersuasive.

16. For other preemption cases in which the Court has looked to administrative interpretation, see *Burbank v. Lockheed Air Terminal, Inc., supra,* 411 U.S. at 628, 93 S.Ct. 1854; *Florida Lime & Avocado Growers, supra,* 373 U.S. at 148, 83 S.Ct. 1210.

17. Indeed, HUD has been apprised of this suit but has not participated in the proceedings or otherwise expressed its position.

Plaintiffs' reliance upon the letter of July 31, 1975, from Mr. Harry Staller, HUD Area

§ 403.3 (1975) ·(mortgagor must initially comply with local rent control procedures before requesting intervention by HUD).

In addition, the instant decision accords with those of other courts that have considered the preemptive effect of the National Housing Act on local rent control. *Helmsley v. Borough of Fort Lee,* 362 F.Supp. 581 (D.N.J.1973); *Druker v. Sullivan, supra,* 322 F.Supp. 1126; *Stoneridge Apts., Co. v. Lindsay, supra,* 303 F.Supp. 677.

▆▆▆▆ The Court therefore holds that § 220 of the National Housing Act does not preempt D. C. Regulation 74–20. Plaintiffs' complaint, fairly read, asserts only the inconsistency of the two statutes on their faces, and in particular does not contend that the regulation has been applied in a way that renders it incompatible with the Act. Such a claim would present a contested issue of fact that would make summary judgment inappropriate. *See Druker v. Sullivan, supra,* 334 F.Supp. 861 (D.Mass. 1971), *aff'd,* 458 F.2d 1272 (1st Cir. 1972), *opinion after abstention sub nom. Druker v. Boston,* 287 N.E.2d 801 (Mass. Sup.Jud.Ct.1972). Moreover, if the local rent control board were to make an adjustment in the individual ceiling rate that would enable the mortgagor to meet the mortgage payments and realize a reasonable return, there would be no actual conflict and hence no preemption; thus, this claim would be premature unless all remedies under the rent control law had been exhausted. *Helmsley, supra,* 362 F. Supp. at 591–92; *Druker, supra,* 322 F.Supp. at 1130; *Stoneridge, supra,* 303 F.Supp. at 680. Similarly, plaintiffs seeking to raise this issue should comply with the applicable HUD regulation, 24 C.F.R. § 403.3 (1975). However, as

Director, to Mr. Jerald Deem, is misplaced. *See* Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and Plaintiffs' Cross-Motion for Summary Judgment, Deem Affidavit, Exhibit 2. This letter merely constitutes HUD's approval of an increase in the maximum rent schedule for Columbia Plaza. Moreover, there is no indication that HUD

noted, the instant case does not involve the validity of D. C. Regulation 74–20 as applied. On the question presented, summary judgment is available, and therefore the defendants' motion is hereby granted and the plaintiffs' motion is denied.

So ordered.

knew that the increased rent would exceed the limits of the D.C. rent control program or that it deemed such a violation necessary to promote the federal interest. *See Helmsley, supra,* 362 F.Supp. at 585 n.6, 591 n.12; *Druker, supra,* 334 F.Supp. at 863–64 n.3; *cf.* 24 C.F.R. § 403.3 (1975).