**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Jack Carl VELTE, Defendant–Appellee.**

**United States of America,
Plaintiff–Appellee,**

v.

**Jack Carl Velte, Defendant–Appellant.**

**Nos. 01–50669, 01–50681.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 8, 2002.

Filed June 5, 2003.

Patrick K. O'Toole, United States Attorney (when brief was filed), Carol C. Lam, United States Attorney (when oral argument was heard and opinion was filed), Steve Miller, Assistant U.S. Attorney, San Diego, CA, for the plaintiff-appellant/cross-appellee.

Vincent J. Brunkow, San Diego, CA, for the defendant-appellee/cross-appellant.

Before: HUG, BRUNETTI and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge.

We must decide whether an individual who, as determined by a jury, purposefully set fire to a national forest, is nonetheless entitled to acquittal of the offense of setting fire to federal land "without authority."

I

On July 22, 2000, a fire was set in the Cleveland National Forest that consumed a large tract of land before it was finally extinguished. The first officer on the scene was Deputy Sheriff McClendon who testified that he was on patrol nearby when he observed smoke. Upon approaching the scene of the fire, McClendon saw Jack Carl Velte sitting behind the wheel of a vehicle in a clearing near the flames. Based upon its size and the fact that it was still growing, McClendon con-

cluded that the fire had been burning for only a short period of time.

McClendon approached Velte and asked whether he started the fire, to which Velte responded, "I don't think so." Upon further questioning by McClendon, Velte speculated that the fire could have been started by a spark off a rock, by the cigarette that he had been smoking, or by someone else. McClendon, who by this point was already suspicious of Velte, then noticed a dirt or sand substance on the knees of his pants and that fresh ash was near the left front tire of his car. McClendon subsequently recovered lighters, books of matches, boxes of cigarettes, paper napkins, and aerial flares from Velte's car.

Officer Saruedi of the U.S. Forest Service also talked to Velte at the scene of the fire. Velte told Saruedi that prior to the start of the fire he had been in the forest brush looking for Indian artifacts. Velte also informed Saruedi that he had been smoking a cigarette during his foray into the forest. Velte claimed that he first noticed the fire when he saw a helicopter hovering above that drew his attention to smoke. Thinking his car was on fire, Velte told Saruedi that he returned to his car at which point Deputy McClendon arrived. Velte further claimed that he did not purposefully start the fire, and that if his cigarette was indeed the cause of the fire, it was unintentional.

Deputy Sheriff Cruzen was the arson investigator who examined the origin of the fire. As part of his investigation, Cruzen followed the burn indicators and found a small piece of white paper with burnt edges within the area that he ascertained was the point of origin. Cruzen also found two other pieces of white paper located nearby. On the basis of these findings, Cruzen determined that the fire had been intentionally set by human hand. Cruzen subsequently asked Velte to show him where he had been walking in the forest prior to the start of the fire. Cruzen claims that when Velte would lead him near the point of origin, Velte would change the topic and divert his attention away from the area.

Cruzen also recovered white paper napkins from inside Velte's car. Cruzen observed that these napkins, as well as the burnt pieces of paper recovered from the scene of the fire, were similar in texture to napkins that one would find at a fast food restaurant. The recovered napkins and pieces of paper were submitted for scientific analysis, but the results were not available until after trial. The completed test results subsequently revealed that the napkins recovered from Velte's car were dissimilar to the pieces of paper found near the point of origin.

Based in large part on this circumstantial and testimonial evidence, Velte was convicted by a jury of willfully setting fire to federal land without authority, in violation of 18 U.S.C. § 1855. Notwithstanding the jury's determination, the district court subsequently entered an order granting Velte's motion for judgment of acquittal. The district court rejected the government's argument that there was sufficient evidence to support the jury conviction, and concluded that no reasonable trier of fact could find beyond a reasonable doubt that Velte acted "without authority" in setting fire to the forest. In addition, the district court also conditionally rejected Velte's motion for a new trial based on claims of improper jury instructions, failure of the government to disclose exculpatory evidence, and ineffective assistance of counsel. The government timely appeals in No. 01–50669, and Velte timely cross-appeals in No. 01–50681.

II

The government, in its appeal, argues that the district court erred in setting

aside Velte's jury conviction. In evaluating the government's claim, we "review the evidence presented against the defendant in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Pacheco–Medina*, 212 F.3d 1162, 1163 (9th Cir.2000) (citation and internal quotation marks omitted).

### A

Velte was charged under 18 U.S.C. § 1855, which provides:

> Whoever, willfully and without authority, sets on fire any timber, underbrush, or grass or other inflammable material upon the public domain or upon any lands owned or leased by or under the partial, concurrent, or exclusive jurisdiction of the United States ... shall be fined under this title or imprisoned not more than five years, or both.

Here, the primary dispute concerns the meaning of "without authority" as this term is used in § 1855. There are only a handful of cases that deal with sufficiency of evidence for a § 1855 violation, *see, e.g., United States v. Newman*, 6 F.3d 623 (9th

Cir.1993); *United States v. Abner*, 35 F.3d 251 (6th Cir.1994), and none of them addresses the statutory meaning of "without authority." Nor does the statute itself provide a definition.

The Supreme Court has instructed that, "In the absence of such a definition, we construe a statutory term in accordance with its ordinary or natural meaning." *F.D.I.C. v. Meyer*, 510 U.S. 471, 476, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Following the Court's lead, our resort to the dictionary informs us that the everyday meaning of "without" is "lacking," and "authority" is "justifying grounds." Webster's Third New International Dictionary 146, 2627 (1986).

Velte construes the ordinary meaning of "without authority" in the context of § 1855 as requiring the government to present evidence of a specific prohibition against the setting of intentional fires to federal lands. Indeed, Velte argues: "An individual does not need permission to set a fire in a National Forest. Everyone has permission to set a fire in a National Forest unless the Forest Service has specifically prohibited the setting of a fire." Brief for Appellee at 11.[1]

---

1. In fact, Velte contends that § 1855 cannot encompass the setting of fire to national forests because other federal regulations govern this same activity. *See* 36 C.F.R. § 261.52 ("When provided by an order, the following are prohibited: (a) building, maintaining, attending or using a fire, campfire, or stove fire."). Accordingly, unless prohibited by order in accordance with 36 C.F.R. § 261.50, 261.51, and 261.52, Velte claims there is an unfettered right to start a fire in the national forests.

We disagree. In reference to 36 C.F.R. § 261.52, we have held that "the United States Forest Service has the authority to prohibit, by order, *all* fires in a given area whenever circumstances warrant such action." *United States v. Launder*, 743 F.2d 686, 691 (9th Cir.1984) (emphasis added).

Therefore, a more sensible interpretation, that comports with the statutory scheme, is that these regulations enable the Forest Service to prohibit fires not covered by 18 U.S.C. § 1855.

For example, these regulations authorize the Forest Service to prohibit the negligent and reckless setting of fires as opposed to 18 U.S.C. § 1855 which only proscribes willfully set fires. In addition, pursuant to 36 C.F.R. § 261.52(c), smoking, which is not covered by 18 U.S.C. § 1855, can be prohibited by order. Furthermore, notwithstanding the government's authorization of certain campfires and stove fires, the C.F.R. provisions enable the Forest Service to prohibit these otherwise lawful fires by the posting of adopted orders. Therefore, contrary to Velte's contention, these regulations merely augment the reach of

■ We reject Velte's baseline proposition that unless otherwise prohibited by Forest Service regulations, individuals have an affirmative right to set fire to federal lands. The clear import of § 1855 is to outlaw the destructive and dangerous activity of setting fire to federal lands, and despite Velte's assertions to the contrary, no further regulatory or statutory enactments are needed to achieve this purpose.

Velte nonetheless contends that the default under § 1855 must be that individuals have an inherent right to set fire to federal lands because to hold otherwise would subject commonplace activities—such as setting a camp fire, lighting a torch, smoking a cigarette or pipe, or striking a match in a national forest—to criminal liability. Velte's concern, however, is unfounded.

In national forests across the country, the government has developed designated areas for campgrounds, and has installed campfire rings and campfire stoves in such areas. By doing so, the government has granted its authority for campfires—subject, of course, to various park rules and regulations—and as a result shielded ordinary campers from the reach of 18 U.S.C. § 1855. And as for lighting a torch, smoking a pipe, or striking a match, these activities, on their face, do not constitute the setting on "fire [of] any timber, underbrush, or grass or other inflammable material upon the public domain," and therefore are not prohibited by § 1855.

■ Accordingly, Velte's contention that an individual has a right to set fire to a national forest unless specifically prohibited by the Forest Service is incorrect. Properly construed, § 1855 prohibits the setting of fires to federal lands that are done willfully and without either the express or implied authorization of the government.

**B**

■ With this background in mind, we now turn to whether the district court erred in granting Velte's motion for acquittal. In setting aside his conviction, the district court left undisturbed the jury's determination that Velte intentionally set fire to the Cleveland National Forest. Therefore, the sole issue before us is whether a rational trier of fact could conclude based on the evidence in the record that Velte acted "without authority" in setting the fire.

That Velte lacked any "justifying grounds" or "authority" to purposefully set fire to the underbrush of the Cleveland National Forest with a cigarette and paper napkin that proceeded to burn 300 acres of land is fairly obvious. Indeed, there is no statutory or common law right to set fire to government-owned national forests.

It is true that certain recreational uses of fire in national forests are permissible under § 1855. Nevertheless, the mere fact that the government has authorized campfires and certain other uses of fire on federal lands does not mean that the government has broadly sanctioned the setting of destructive fires to national forests. In fact, in interpreting an earlier statute pertaining to the use of fire in or near forests, the Supreme Court stated that "[t]he purpose of the Act is to prevent forest fires which have been one of the great economic misfortunes of the country." *United States v. Alford*, 274 U.S. 264, 267, 47 S.Ct. 597, 71 L.Ed. 1040 (1927).

As a result, we conclude that a rational trier of fact could find beyond a reasonable doubt that Velte acted "without authority"

§ 1855 in prohibiting destructive fires in national forests.

in intentionally setting fire to the Cleveland National Forest. Because Velte's actions fall within the scope of 18 U.S.C. § 1855, we further conclude that the district court erred in granting the defendant's motion for judgment of acquittal.[2]

## III

We now turn to Velte's cross-appeal claiming that the district court erred in conditionally denying his motion for a new trial.

## A

■ Velte first challenges the propriety of certain jury instructions specifying that the government need not prove that the defendant knew that his acts or omissions were unlawful.[3] Velte claims that this instruction was improper because under 18 U.S.C. § 1855 an individual must be aware that the act of setting fire is without authority. However, the statutory language clearly refutes Velte's argument. 18

U.S.C. § 1855 prohibits individuals from "willfully and without authority, set[ting] on fire" federal land. While "willfully" modifies the actus reus of setting on fire, it does not modify "without authority."

Moreover, an implied *mens rea* element does not attach to the element of "without authority." A court should "read into a statute only that *mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'" *Carter v. United States*, 530 U.S. 255, 269, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000) (quoting *United States v. X Citement Video, Inc.*, 513 U.S. 64, 72, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994)).

Arguing that it is "otherwise innocent conduct" for an individual to set a fire in a national forest, Velte claims that we should infer that a *mens rea* element attaches to "without authority." However, as the district court aptly noted, "fire is inherently dangerous to people and property. The

2. The government argues on appeal that a map of the Cleveland National Forest that was entered into evidence during the trial constitutes sufficient proof that Velte acted without authority. The back of the map states in part: "Because of the potential danger from human-caused fires, fire regulations are in effect in the forest all year long. Campfires are permitted only within grills and fire rings provided in developed campgrounds and picnic areas. All wood and charcoal fires are forbidden outside of these sites."

When admitted into evidence, the map was seemingly offered for the purpose of establishing that the fire occurred inside the territorial boundaries of Cleveland National Forest. The district court determined that the back of the map was not in evidence because it was never displayed or referred to in court, and that in failing to object to its admissibility, Velte made a reasonable assumption that the map was a depiction of the jurisdictional area of the forest, and nothing else.

But since we conclude that a rational trier of fact could find on the basis of the other

evidence in the record that Velte acted "without authority" when setting fire to the forest, we need not address the government's claim that the back of the map was properly entered into evidence as proof of a specific prohibition against setting fire to the forest.

3. At trial, the district court gave the following jury instructions:

In order for the defendant to be found guilty of [violating 18 U.S.C. § 1855], the government must prove each of the following elements beyond a reasonable doubt:

That the defendant willfully and without authority set fire to any timber, underbrush, grass or other flammable—inflammable material on the public domain of the United States.

. . . .

The government is not required to prove that the defendant knew that [his] acts or omissions were unlawful. You may consider the evidence of the defendant's words, acts or omissions along with all the other evidence in deciding whether the defendant acted knowingly.

nature of fire puts one on notice to exercise caution. It is appropriate to require those who wish to start a fire to ensure that setting the fire is permitted." *United States v. Velte,* No. CR–00–2698, at 10 (S.D.Cal. Oct. 18, 2001). We agree with the district court, and therefore conclude that the jury instruction was a correct application of law.

## B

■ Velte next argues that the alleged failure of the government to disclose both the testing analysis of the napkin evidence and certain humidity records constitutes a violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Supreme Court in *Brady* held that "suppression by the government of evidence favorable to the defendant violates due process." *U.S. v. Bracy,* 67 F.3d 1421, 1428 (9th Cir.1995).

■ Here, however, there was no such suppression of evidence. Velte concedes that the government did not have the results of the napkin analysis at the time of trial. Furthermore, Velte does not set forth any allegations of bad faith on the part of the government. Therefore, we agree with the district court that Velte's true claim is for a new trial in light of after-acquired evidence rather than a *Brady* violation. In order to succeed on such a claim, Velte must meet a five-factor test. *See United States v. Sitton,* 968 F.2d 947, 959–60 (9th Cir.1992). Here, the relevant factor is whether "the failure to discover the evidence sooner was not the result of[Velte's own] lack of diligence." *Id.* at 959.

■ It is readily apparent from a review of the record that any undue delay concerning the napkin analysis was due to Velte's own lack of diligence. Velte had his own arson expert examine the napkins before trial. In light of how important the paper evidence was to the government's case, Velte, therefore, had more than adequate incentive and opportunity to conduct the necessary testing in time for trial. Furthermore, Velte exploited the absence of the testing results to his advantage during cross-examination of Officer Cruzen. Because "[w]e are loath to grant a new trial on the basis of any such tactical decision to postpone testing," *id.* at 960, we conclude that the district court properly denied Velte's motion for a new trial based on the newly discovered napkin evidence.

■ Velte also argues that the failure of the government to disclose a humidity report requires a new trial. It is true that a lower relative humidity level translates into a greater probability that a discarded cigarette could have accidentally started the fire. Expert testimony at trial estimated the relative humidity level at the time of the fire to be 18%, but a report by the Cameron Regional Automated Weather Station determined that the actual level was 12%. Velte argues that because Cameron is a government weather station, and the obligation to disclose exculpatory information extends to those "acting on the government's behalf," *Carriger v. Stewart,* 132 F.3d 463, 479–80 (9th Cir.1997) (en banc), the failure to disclose the humidity report constitutes a *Brady* violation.

■ Velte's argument fails because there is no connection between the prosecutor and Cameron such that the weather station could be deemed as "acting on the government's behalf." Furthermore, the prosecutor was unaware of the humidity report until the defendant produced it after trial. Accordingly, we conclude that the failure to discover the humidity report prior to trial, as with the napkin evidence, was due to Velte's own lack of diligence and therefore does not warrant a new trial.

### C

Velte finally argues that he is entitled to a new trial on the basis of ineffective assistance of counsel. In support of this claim, Velte points to trial counsel's failure to move to suppress various statements made by the defendant to law enforcement officers, his failure to have the napkins tested prior to trial, and his failure to investigate the relative humidity level at the time of the fire.

Ineffective assistance challenges are generally brought by collateral attack on the conviction. "This court usually declines to reach ineffectiveness challenges on direct appeal, because the claim cannot be advanced without development of facts outside the record." *United States v. Hanoum,* 33 F.3d 1128, 1131 (9th Cir.1994). Here, we agree with the district court that the record is inadequate to determine whether Velte received ineffective assistance. Because the proper avenue to bring his claim is on collateral attack of his conviction, we reject Velte's motion for a new trial.

### IV

For the foregoing reasons, we REVERSE the district court's grant of Velte's motion for judgment of acquittal and AFFIRM the district court's denial of Velte's motion for a new trial.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.