**TOPA EQUITIES, LTD.,**
Plaintiff–Appellant,

v.

**CITY OF LOS ANGELES,**
Defendant–Appellee,

**Coalition for Economic Survival;
Maria Lourdes Lara; Tai Park,**
Intervenors–Appellees.

No. 02–56034.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 2003.

Filed Sept. 8, 2003.

Susan S. Azad and Kathryn M. Davis, Latham & Watkins, Los Angeles, CA, for the plaintiff-appellant.

Harry J. Kelly, Nixon Peabody, Washington, DC, for the amici curiae in support of plaintiff-appellant.

Kenneth T. Fong, Los Angeles City Attorney's Office, Los Angeles, CA, for the defendant-appellee.

Kenyon F. Dobberteen, Legal Aid Foundation of Los Angeles, Los Angeles, CA, for the intervenors-appellees.

David Pallack and Min Chang, Neighborhood Legal Services of Los Angeles County, Pacoima, CA, James R. Grow and Craig Castellanet, National Housing Law Project, Oakland, CA, Deanna Kitamura, Western Center on Law and Poverty, Los Angeles, CA, for the amici curiae in support of defendant-appellee.

Before THOMPSON, TROTT, and TALLMAN, Circuit Judges.

## OPINION

DAVID R. THOMPSON, Circuit Judge.

TOPA Equities, Ltd. ("TOPA") owns an apartment building in Los Angeles, California. In 1971, TOPA entered a federal program by which the government subsidized TOPA's mortgage interest payments in return for TOPA charging below-market rents. In 1998, TOPA left the government program. It wanted to raise its rents to market levels. Standing in its way, however, was Los Angeles's Rent Stabilization Ordinance ("LARSO"), which regulates "rents so as to safeguard tenants from excessive rent increases[.]" Under LARSO, the below-market rents TOPA had been charging while a participant in the federal program could not be raised until existing tenancies terminated.

Seeking relief from LARSO, TOPA filed the present lawsuit against the City of Los Angeles. TOPA contended that it was not subject to LARSO because LARSO was preempted by federal law. The district court disagreed, and granted summary judgment in favor of the City. TOPA appeals.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm. LARSO is a generally applicable rent control ordinance that does not unduly interfere with federal housing programs. It is not expressly preempted by federal law, nor is it preempted on conflict grounds.

## I. BACKGROUND

### A. Federal Housing Statutes

In 1934, Congress enacted the National Housing Act ("NHA") to provide "a decent home and suitable living environment for every American family." 12 U.S.C. § 1701t. In 1968, Congress added Section 236 to the NHA "[f]or the purpose of reducing rentals for lower income families[.]" 12 U.S.C. § 1715z–1. Under Section 236, the federal government enters into 40–year agreements with property owners by which it provides mortgage interest subsidies to owners who are willing to charge below-market rents. *Id.* In 1970, HUD promulgated regulations that permit participants, after 20 years in the federal program, to prepay their subsidized mortgages, exit the program, and free themselves from federal rent control. 24 C.F.R. § 221.524(a)(ii) (1970).

In 1987, Congress passed the Emergency Low Income Housing Preservation Act ("ELIHPA") out of concern that the stock of low income housing would be depleted if property owners left the federal rent control program after just 20 years. 12 U.S.C. § 17151 note (1988). ELIHPA effectively placed a two-year moratorium on participants' ability to prepay their mortgages and leave the federal program. *Id.*

In 1990, Congress replaced ELIHPA with the Low Income Housing Preservation and Resident Homeownership Act ("LIHPRHA"). 12 U.S.C. § 4101. LIHPRHA imposed stringent requirements upon property owners who wanted to prepay their mortgages and exit the federal program. *Id.* §§ 4101(a), 4108. At the same time, LIHPRHA provided incentives for property owners to stay in the program. *See id.* § 4109. LIHPRHA also expressly preempted state laws that "restrict[ ] or inhibit[ ] the prepayment of any [subsidized] mortgage," or are "limited only to eligible low income housing for which the owner has prepaid the mortgage[.]" *Id.* § 4122(a). LIHPRHA provided, however, that its preemption provision would "not prevent the establishment, continuing in effect, or enforcement of any law or regulation of any State . . . relating to . . . rent control . . . to the extent such law or regulation is of general applicability[.]" *Id.* § 4122(b).

In 1996, Congress eliminated the prepayment restrictions imposed by LIHPRHA by enacting the Housing Opportunity Program Extension Act ("HOPE"), Pub.L. No. 104–120, 110 Stat. 834. HOPE permits property owners to prepay their mortgages after 20 years, but prohibits them from raising rents for 60 days after exiting the program. *See* 12 U.S.C. § 4101 note. HOPE contains no preemption provision nor does it mention LIHPRHA's preemption provision. After enacting HOPE, Congress ceased funding the additional incentives provided by LIHPRHA.

## B.  *LARSO*

In 1979, Los Angeles enacted LARSO "to regulate rents so as to safeguard tenants from excessive rent increases, while at the same time providing [owners] with just and reasonable returns from their rental units." Los Angeles Municipal Code § 151.01 (1995). LARSO caps the maximum rent owners may charge for a unit based on the current rent for that unit. *Id.* §§ 151.02, 151.04. For new units, owners may establish initial rents at market level, but thereafter must comply with LARSO's maximum rent provisions. *Id.* LARSO also contains a vacancy decontrol provision that permits owners to raise the rent for a unit to market level after the tenancy for that unit has terminated. *Id.* § 151.06. In addition, to ensure that owners receive a reasonable return on each unit, LARSO allows owners to petition for permission to charge higher rents. *Id.* § 151.07. Properties that participate in federal programs under the NHA are exempt from LARSO. *Id.* § 151.02.

In 1990, Los Angeles amended LARSO's maximum rent and vacancy decontrol provisions. The amended ordinance provides that "[w]here a rental unit was exempt from the provisions of this chapter . . . the maximum rent shall be the amount of rent last charged for the rental unit while it was exempt." *Id.* The amended ordinance also provided that LARSO's vacancy decontrol provision would not apply "[i]f a rental unit is vacated as a result of the termination of the regulation of the rental unit under any local, state, or federal program." *Id.* § 151.06. It is these 1990 amendments to LARSO that TOPA challenges in this litigation.

### C. *TOPA*

When TOPA entered the federal NHA Section 236 rent control program back in 1971, it obtained a 40–year, HUD-subsidized mortgage in return for charging below-market rents. TOPA prepaid its subsidized mortgage in 1998 and exited the federal program. The Housing Authority of Los Angeles then informed TOPA that it was subject to the 1990 LARSO amendments and, until vacancies occurred, it would have to keep its rents at the 1998 levels it had been charging under the federal program. This litigation followed. The issues presented in this appeal are whether federal law expressly preempts the 1990 LARSO amendments, and if not whether those amendments are preempted on conflict grounds.

## II. DISCUSSION

■ The Supremacy Clause of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land[.]" U.S. Const. art. VI. Applying this provision in the federal preemption context, we have identified three instances in which federal law preempts state law: "(1) *express preemption*—where Congress explicitly defines the extent to which its enactments preempt state law; (2) *field preemption*—where state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy;[1] and (3) *conflict preemption*—where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Williamson v. Gen. Dynamics Corp.*, 208

F.3d 1144, 1149 (9th Cir.2000) (internal quotation marks omitted).

### A. *Express Preemption*

■ LIHPRHA contains an express preemption provision which preempts "any law or regulation that ... restricts or inhibits the prepayment of any mortgage described in section 4119(1)[2] of this title." 12 U.S.C. § 4122(a). Los Angeles contends this preemption provision has been repealed by HOPE, and as a result we need not concern ourselves with it. We disagree. HOPE does not expressly or impliedly repeal LIHPRHA's preemption provision. HOPE neither mentions LIHPRHA, nor is it irreconcilable with it. *See Firebaugh Canal Co. v. United States*, 203 F.3d 568, 575 (9th Cir.2000) ("[T]he intention of the legislature to repeal must be clear and manifest, and in the absence of some affirmative showing of an intention to repeal, the *only* permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable.") (internal citation and quotation omitted); *see also Lujan–Armendariz v. INS*, 222 F.3d 728, 743–44(9th Cir.2000).

■ While it is true that Congress has, since enacting HOPE, ceased funding LIHPRHA's incentive programs, that inaction has no effect on LIHPRHA's express preemption provision. That provision is extant. In so resolving this issue, we join the Eighth Circuit, which is the only other circuit to address it. *Forest Park II v. Hadley*, 336 F.3d 724, 732–33(8th Cir.2003) ("The fact that Congress no longer funds the incentive programs established by LIHPRHA does not mean that the prepayment provisions contained

---

**1.** Field preemption is not raised as an issue in this case.

**2.** Section 4119(1)(A)(iii) defines "eligible low income housing" as "any housing financed by

a loan or mortgage ... that is ... insured, assisted, or held by the Secretary ... under section 1715z–1 of this title[.]" 12 U.S.C. § 4119(1). The Section 236 program was established pursuant to § 1715z–1.

therein are irrelevant or that the statute is no longer the law."). With regard to whether LIHPRHA actually preempts LARSO, we distinguish *Forest Park II* later in this opinion.

■ The question thus becomes whether LIHPRHA's express preemption provision set forth in 12 U.S.C. § 4122(a) preempts the 1990 LARSO amendments. We conclude it does not, because the LARSO amendments do not restrict or inhibit the prepayment of federally subsidized mortgages, and are exempt from the express preemption provision of § 4122(a) by the language of § 4122(b).

The terms "restrict or inhibit" which appear in § 4122(a) are not defined by the statute; therefore, we construe them "in accordance with [their] ordinary or natural meaning." *United States v. Velte*, 331 F.3d 673, 677 (9th Cir.2003) (internal quotation marks omitted). The Fourth Edition of Webster's New World College Dictionary (2002) defines "restrict" as to "put certain limitations on;" it defines "inhibit" as "to hold back or keep from some action" and "to prohibit; forbid."

LARSO neither prohibits nor limits TOPA's ability to prepay its federally subsidized mortgage. TOPA is free to prepay its subsidized mortgage and leave the federal program if it wishes. If it does so, it becomes subject to the 1990 LARSO amendments the same as any other apartment owner with existing tenants. If TOPA chooses to prepay its subsidized mortgage and replace it, the interest rate it will pay on its replacement mortgage will no doubt exceed the interest rate it was paying on its subsidized mortgage. But this is an economic choice TOPA is free to make. If the rents it was receiving under the federal program turn out to be

so low that it will not be able to realize a just and reasonable return on its rental units, it can apply for discretionary relief under Los Angeles Municipal Code § 151.01. Moreover, as tenancies terminate (other than as a result of leaving the federal program), TOPA can increase its rents to market levels. We conclude that LIHPRHA § 4122(a) does not expressly preempt the 1990 LARSO amendments.[3]

■ This conclusion is further supported by the exemption provision of LIHPRHA § 4122(b). This provision states that § 4122(a)

> shall not prevent the establishment, continuing in effect, or enforcement of any law or regulation of any State or political subdivision of a State not inconsistent with the provisions of this subchapter, *such as any law or regulation relating to* building standards, zoning limitations, health, safety, or habitability standards for housing, *rent control,* or conversion of rental housing to condominium or cooperative ownership, *to the extent such law or regulation is of general applicability* to both housing receiving Federal assistance and nonassisted housing.

12 U.S.C. § 4122(b) (emphasis added).

LARSO is a municipal rent control ordinance of general applicability within the meaning of § 4122(b); it is not inconsistent with LIHPRHA, and thus it is exempt from the express preemption provision of § 4122(a). Because the language of § 4122(a) and § 4122(b) is plain and unambiguous, we need not consider legislative history to resolve the express preemption issue. *In re Bankruptcy Estate of Markair, Inc.,* 308 F.3d 1057, 1064 (9th Cir. 2002) ("Because the text of the statute is

---

**3.** LIHPRHA § 4122(a)(4), which expressly preempts state laws that are "limited only to eligible low-income housing for which the owner has prepaid the mortgage," is inappo-

site because LARSO is not "limited only to eligible low-income housing for which the owner has prepaid the mortgage."

clear, we need not explore legislative history.").

We are mindful that the Eighth Circuit in *Forest Park II* held that the Minnesota statutes there at issue were expressly preempted by § 4122(a). Those statutes, however, unlike the 1990 LARSO amendments, "prohibit[ed] prepayment" for a specified period of time even if "an owner [had] otherwise complied with the federal notice requirements[.]" *Forest Park II*, 336 F.3d at 733. According to the Eighth Circuit, "[t]he effect [was] that the state law force[d] the federal government to continue to provide financial assistance to the participant when both the federal government and the participant[had] chosen to end their relationship." *Id.* at 732. That is not the case here.

## B. *Conflict Preemption*

■ We next consider whether LARSO is preempted on conflict grounds. Conflict preemption occurs "where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Williamson*, 208 F.3d at 1149(internal quotation marks omitted). TOPA does not contend that it could not comply with both LARSO and federal law.

With regard to whether LARSO stands as an obstacle to the implementation of the federal program, the Supreme Court has stated that the "pertinent question[ ]" is whether the state law "sufficiently injure[s] the objectives of the federal program to require nonrecognition." *His-*

*quierdo v. Hisquierdo*, 439 U.S. 572, 583, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979); *see also Kargman v. Sullivan*, 552 F.2d 2, 6 (1st Cir.1977) ("Our task on review is to determine whether the [city ordinance] ... so significantly frustrated federal interests in the operation of the [NHA] program that [the city's] traditionally strong interests in local rent control must yield.").

TOPA contends that the 1990 LARSO amendments are an obstacle to the NHA low-income housing program because the amendments frustrate the federal goal of obtaining private participation in the federal program. To obtain that participation, TOPA argues, the 1970 HUD regulations provide an incentive for the private development of low-income housing by assuring owners that after 20 years they can prepay their federally subsidized mortgages, exit the federal program and raise their rents to market levels. The LARSO amendments prevent an immediate raise of rents to market levels; therefore, according to TOPA, the amendments impede implementation of the federal program, because developers would not enter a program that would preclude them from realizing a market rate of return on their properties after 20 years in the program.

The fallacy of this argument is its mischaracterization of the HUD regulations and its failure to account for the plain language of·§ 4122(b). There is no assurance in the HUD regulations, or in any other federal statute or regulation, that after 20 years an owner may raise rents to market levels.[4] The assurance is that af-

---

4. TOPA's reliance on *Cienega Gardens v. United States*, 38 Fed. Cl. 64 (Fed.Cl.1997), *rev'd by* 194 F.3d 1231 (Fed.Cir.1998), is misplaced. In vacating the decision by the United States Court of Federal Claims, the Federal Circuit not only declined to address whether LARSO was preempted, it explicitly noted that the government "argues that the [trial] court erred in holding that LARSO was preempted by ELIHPA and LIHPRHA." *Cienega Gardens*, 194 F.3d at 1239; *see also Cienega Gardens v. United States*, 265 F.3d 1237, 1247 (Fed.Cir.2001). The Federal Circuit's most recent *Cienega Gardens* decision does not address whether LARSO is preempted by federal law. *Cienega Gardens v. United States*, 331 F.3d 1319 (Fed.Cir.2003).

ter 20 years an owner may prepay his federally subsidized mortgage, exit the federal program and free himself of federal regulation, including federal rent control. Nothing in the HUD regulations purports to limit states from enacting their own rent control laws of general applicability which apply equally to apartment owners who exit the federal program as well as other apartment owners. Indeed, the express language of § 4122(b) provides that states and political subdivisions may establish rent control laws of general applicability. 12 U.S.C. § 4122(b).

■ Congressional intent remains "the ultimate touchstone of preemption analysis." *Lindsey v. Tacoma–Pierce County Health Dept.*, 195 F.3d 1065, 1069 (9th Cir.1999) (quotations omitted). Congress explicitly stated that it enacted the NHA to provide "a decent home and suitable living environment for every American family," 12 U.S.C. § 1701t, and that it established the Section 236 program "[f]or the purpose of reducing rentals for lower income families[.]" 12 U.S.C. § 1715z–1. Congress never indicated—in either the text or legislative history of the NHA or in any ancillary statute—that it intended to abrogate state rent control laws. *See, e.g.*, 12 U.S.C. § 4122(b) (placing congressional imprimatur on generally applicable state rent control ordinances). To the contrary, "[t]he federal legislation creating the network of subsidized housing laws is superimposed upon and consciously interdependent with the substructure of local law relating to housing." *Kargman*, 552 F.2d at 11; *see also Columbia Plaza Ltd. P'ship v. Cowles*, 403 F.Supp. 1337, 1341–43 (D.D.C.1975), *remanded* 551 F.2d 466 (D.C.Cir.1977).

We find the First Circuit's decision in *Kargman* instructive. There, participants in the NHA program who received financial benefits in exchange for charging rent at HUD-approved levels challenged a Boston, Massachusetts rent control ordinance that required them to charge rents lower than the HUD approved levels. *Kargman*, 552 F.2d at 4–6. The First Circuit held there was no preemption "in the case at bar where Boston, in pursuit of its own interests that are basically consistent with federal purposes, operates an independent regulatory scheme that has no demonstrated impact on the federal program, but merely has some financial consequences for some landlords who participate in the program." *Id.* at 12. The court opined that "[t]he mere potential for conflict which we have perceived in this case is not enough to justify a court in concluding that federal power precludes an otherwise valid exercise of state sovereignty." *Id.* at 13.

Here, although Congress (or perhaps HUD) could have chosen to preempt rent control ordinances such as the 1990 LARSO amendments, it did not do so.[5] In the absence of such action, we will not arrogate that power to ourselves. *Cf. New York State Dept. of Soc. Servs. v. Dublino*, 413 U.S. 405, 413, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973) ("The problems confronting our society in these areas are severe, and state governments, in cooperation with the Federal Government, must be allowed considerable latitude in attempting their resolution. This Court has repeatedly refused to void state statutory programs, absent congressional intent to pre-empt them.").

### III. CONCLUSION

LARSO is a generally applicable municipal rent control ordinance that safeguards tenants from excessive rent increases. It

---

5. After the First Circuit decided *Kargman*, HUD preempted Boston's rent control ordinance to the extent it applied to properties still in federal housing programs. *City of Boston v. Harris*, 619 F.2d 87, 93 (1st Cir. 1980).

treats properties exiting federal housing programs neither better nor worse than properties that were never part of such programs. The 1990 LARSO amendments are not expressly preempted by LIH-PRHA, nor are they preempted on conflict grounds.

**AFFIRMED.**